IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

JENNIFER PORTER     PLAINTIFF

V.     CIVIL ACTION NO. 1:19-CV-65-DAS

STEEL DYNAMICS COLUMBUS, LLC     DEFENDANT

## MEMORANDUM OPINION

This matter is before the court on the motion of the defendant, Steel Dynamics Columbus, LLC (Steel Dynamics) for an award of attorney fees. The plaintiff filed suit against her former employer alleging FMLA (Family Medical Leave Act) retaliation. After her deposition, the plaintiff moved to dismiss her complaint, conceding that, as a matter of law, she could not prevail in her action. The defendant seeks to recover its attorney fees and other litigation expenses, amounting to $41,269.25, as a sanction for the plaintiff's asserted bad faith.

## FACTUAL BACKGROUND

The defendant contends that the plaintiff instituted this action in bad faith, knowing that the defendant fired her for committing fraud when she collected short term disability benefits. Steel Dynamics claims the plaintiff lied to them, telling her supervisor that she was having knee surgery when she in fact had elective surgery to reverse a tubal ligation. She also used her FMLA leave and short-term disability benefits to take a partially paid four-day birthday vacation to Jamaica during her alleged convalescence.

The plaintiff concedes both that she was less than candid with her own counsel, and based on the facts as discovered during her deposition, she could not prevail on her claim that she was fired in retaliation for her use of FMLA leave. She argues because FMLA does not

1

provide for the award of attorney fees to prevailing defendants this court should not make such an award to Steel Dynamics. She also argues that any misconduct by her was in connection with her employment as opposed to this litigation, making sanctions inappropriate. She points to factual disputes between the parties, though she has not offered any proof beyond that submitted by the defendant.

## ANALYSIS

### Authority for the Imposition of Sanctions

The court must first decide whether it can grant attorney fees and expenses as a sanction. The plaintiff contends the court cannot grant attorney fees in this case because though the Family Medical Leave Act provides that successful plaintiffs may recover their attorney fees and other litigation expense, it makes no reciprocal provision for the successful defendant. The defendant readily concedes that FMLA does not provide a remedy to it, and instead seeks its legal expenses as a sanction for the plaintiff's alleged bad faith in bringing and prosecuting this action. It invokes this court's inherent authority to impose this sanction regardless of the provisions of the FMLA.

The United States Supreme Court has definitively decided that the existence of statutes and rules providing for sanctions does not preempt the court's inherent authority to sanction parties for bad faith. In *Chambers v. NASCO*, 501 U.S. 32 (1991), the Court decided the lower court had appropriately awarded the full amount of NASCO's attorney fees. Chambers sold his TV station to NASCO but later changed his mind. He and his attorney engaged in a variety of unreasonable tactics seeking to defeat the clearly meritorious action seeking specific performance of the sales contract. Chambers argued that 28 U.S.C. § 1927 and the assorted sanctioning provisions of the Federal Rules of Civil Procedure reflected an intent to displace any

2

inherent authority of the court in favor of those statutory and rule provisions. The Court rejected that argument. The courts are imbued with "certain powers" that "cannot be dispensed with … because they are necessary to the exercise of all others." *Id*. at 43 (quoting *United States v. Hudson*, 7 Crunch 32, 34, 3 L.Ed 259 (1812)). The court's inherent powers are governed, "not by rule or statute but by the control necessarily vested in the courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. (quoting *Link v. Wabash R.Co.*, 370 U.S. 626, 630-631 (1962)). The Court found that attorney fees may be awarded under the court's inherent authority if a party acted in bad faith. "We discern no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for the bad-faith conduct…." *Id.* at 46. Thus, the terms of the FMLA do not prohibit the imposition of attorney fees in this action.

### Should The Court Order Porter to Pay Attorney Fees as a Sanction?

There are four factors the court must consider when deciding whether to impose sanctions against Porter. The court looks at the conduct that is to be punished or deterred in the future. It also looks both at the expenses or costs imposed by the conduct and determines whether the costs are reasonable. It also considers if the damages could have been mitigated. Finally, the court must consider whether the sanction is adequate to achieve the court's purpose. *Tapalian v. Ehrman,* 3 F.3d 931, 937 (5th Cir. 1993).

### Bad Faith Conduct

The court must next decide whether the defendant has shown the plaintiff instituted and continued this action in bad faith. When bad faith is at issue as in the present case, and the parties do not agree on the facts, the court accepts the plaintiff's version of events.

3

Without dispute, the plaintiff went on FMLA leave when she had only three days of vacation leave. There is no dispute that because she was having an elective procedure, she was not eligible for FMLA leave; nor was she eligible for the short-term disability benefits provided by her employer. The plaintiff asserts she mistakenly -- but in good faith -- believed that the fact that the procedure was elective did not impact her eligibility for these benefits. She thought she was acting in good faith when she filed suit because "her employer took issue with what she did with her time on FMLA leave." [1]

Steel Dynamics contends Porter lied about the procedure she was having and about the length of her convalescence to obtain paid leave for the procedure and for a vacation. According to her supervisor, John Purtell, Porter told him in April 2018, that she needed to have a procedure done on her knee. She had complained about one or both of her knees bothering her when she had to utilize the stairs at work. She specified that it was the "other" knee because she had one knee surgery a few years earlier, while employed by Steel Dynamics.

Porter denies she told Purtell she was having knee surgery but admits she knew from conversations she had with Purtell he assumed it was for knee surgery. Porter did not correct this assumption. Porter knew in early April she would have the procedure done in the latter half of June, but did not talk to Steel Dynamics's nurse until after the procedure. Even then, she did not tell the nurse the procedure performed or that she was leaving for her Jamaica vacation. She gave the nurse contact information for the doctor's office but an incorrect fax number. The company nurse provisionally approved the FMLA leave and disability benefits based on Steel Dynamics' understanding that Porter was having knee surgery.

---

[1] The court notes that the response is not consistent with the allegations of the complaint which alleged that Steel Dynamics discharged her because the reversal of the tubal ligation put them on notice of her intent to become pregnant.

On July 12, 2018, her doctor sent Porter's FMLA paperwork to Steel Dynamics, and the company nurse learned the doctor released Porter to return to work on July 9, 2018. Porter had been on vacation in Jamaica from July 6 through July 10, 2018. When the nurse contacted Porter to ask why she had not returned to work, Porter told her the release date was a mistake. Porter says she requested and received a correction of the return to work to July 23. Steel Dynamics later received a new return to work form with July 9 crossed out and replaced with July 23.

After talking with her doctor's office, Porter texted Purtell telling him the release date was a mistake. She also told him she had just left her follow up visit with the doctor. She admitted in her deposition this was not true, as the only medical follow-up had been telephonic and a few days after the June 22 procedure.[2]

The next day Porter met with Ray Hamer and Jeff Roach of Steel Dynamics, who fired her. A memorandum of the meeting is in the record, and Porter in her deposition agreed it accurately summarized the meeting. Hamer asked Porter about the fact that her paperwork was missing early on and the discrepancies in the later received paperwork. He asked Porter why she had not returned to work when the doctor released her. Porter blamed the doctor's office for not sending the paperwork on time. When asked if she needed additional time to recover, she told them it was a "female' procedure. This was a surprise to these Steel Dynamics representatives because they understood she was having knee surgery.

When confronted with pictures of her vacation, Porter admitted the pictures and video were of her. They told Porter there was also a video of her riding on an ATV, bouncing around on "very rough trails." When asked if her recovery included this kind of activity, Porter argued

---

[2] When a co-worker responded to her social media vacation posts and asked about how her knee was doing, she admittedly lied telling him the knee was swollen and that she was icing it. Her social media postings include a scene from "today's hike."

that she would be able to take vacation while on short term disability. In an exit interview with the company Porter indicated she did not feel the company had discriminated against her.

The court finds that Porter misled Steel Dynamics when she did not correct Purtell's assumption about the nature of the procedure or alternatively advising the nurse of the actual procedure. Porter has taken the position that it does not matter that she took vacation while on FMLA leave and receiving disability benefits. Clearly the problem is that Porter was taking medical leave and collecting disability pay when her postings on social media indicated that she did not need either. She was on vacation for two days after the first release to return to work. Whether she misled Purtell by omission or commission, Porter was fired for her dishonesty and has admitted she knew why the employer did so.

Furthermore, contrary to her assertion, Porter's misconduct extended to the filing and prosecution of this action. She was admittedly less than candid with her attorney. Her complaint alleges Steel Dynamics fired her because it knew she intended to become pregnant. She failed to produce proof to support this claim. When the true circumstances came out in her deposition, her attorney realizing the lawsuit would fail, moved to dismiss the action. The only conclusion this court draws is that but for Porter's lack of candor, this action would not have been filed.

Additionally, Porter's testimony at her deposition eventually established that she misrepresented crucial facts about her communications with Steel Dynamics concerning her leave and disability requests in her responses to interrogatories.

Seeking to spare her client the consequences of her actions, plaintiff's counsel argues that Steel Dynamics seeks to punish Porter for conduct related only to her employment and not to her prosecution of this action. The court disagrees for the above reasons and notes that Steel Dynamics took no further punitive action against Porter after firing her. She was allowed to

retain the disability benefits and even paid for her three days of vacation time. In other words, the court is satisfied that the plaintiff commenced and continued this action in bad faith.

### Expense Caused by the Bad Faith Conduct and Mitigation

The defendant has submitted an itemization of its expenses in this action. The court finds that the hourly rate for the representation is a reasonable and customary rate. A review of the itemization shows reasonably expected costs of defense. Defense counsel prepared a written set of discovery and took the depositions of the plaintiff and her partner. The defense proceeded in a conservative manner, covering the basics in discovery and no more. While the plaintiff did not delay or obstruct the discovery process, had plaintiff not been less than candid with her attorney, none of this expense would have been necessary. Had she been candid in answering the written discovery, the action could have ended sooner and lessened the damages to the defendant.

The plaintiff argues that the defendants failed to mitigate their expenses because they did not immediately inform the plaintiff's counsel about their claim that Porter had engaged in fraudulent conduct and did not file a counterclaim against her. As the defendant points out, the plaintiff did not pursue earlier discovery nor did she contact and interview individuals identified as having discoverable information. The suggestion that the defense should have put all its cards on the table as early as the pre-discovery meeting is suggesting a very high-risk procedure for a defendant looking to defend itself from a plaintiff it knew had not been candid. How best to approach the defense of the action was a reasonable judgment call, and the court disagrees that the defendant failed to mitigate its damages.

### Adequacy of the Sanction to Deter

The court must now consider "the least severe sanction" that will be adequate to deter such conduct in the future. Sanctions should not be vindictive or overly harsh. *Tapalian,* 3 F.3d

7

at 937. While working for Steel Dynamics the plaintiff made $ 18.00 per hour and worked approximately forty-five hours per week. The defendant seeks a sum roughly equivalent to a year's salary at her former employment. The court finds such a sanction would be excessive. In *Coats v. Pierre*, 890 F.2d 728 (5th Cir. 1989) the Fifth Circuit found that the imposition of a $ 20,000 sanction was excessive where a former professor, proceeding *pro se*, earned between twenty-two thousand and twenty-eight thousand per year while employed with the defendant. Though the court felt compelled to reduce his sanctions to $ 1,800.00, it stated that it was not implying that "a litigant's income should be determinative in the assessment of sanctions. We have simply determined that, given the conduct involved and Dr. Coats economic circumstances, $ 1,800.00 is sufficient." *Id.* at 734.

This court likewise thinks consideration of the plaintiff's economic circumstances is appropriate.[3] Considering her past earning capacity as a factor in assessing the least amount that will be an effective sanction, the court finds that an award of $ 5,000.00 is sufficient to deter future bad faith litigation by the plaintiff; serve as a warning to others who would be tempted to engage in such conduct; and provide partial compensation to the defendant, Steel Dynamics.

A judgment consistent with this opinion shall be entered in favor of the defendant against the plaintiff.

This the 23rd day of June, 2020.

                                        **/s/ David A. Sanders**
                                        **U.S. MAGISTRATE JUDGE**

---

[3] The court has reviewed the plaintiff's testimony concerning her self-employment income as of her deposition in late 2019. She claimed to make about half of her Steel Dynamics income. The court does not credit this testimony mainly because she testified that she did not keep track of how much she was earning and kept no records.